*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 30, 2024

Plaintiff-Appellee,

v

No. 365560
Van Buren County Circuit Court
LC No. 2021-023329-FH

FRANK LEE GALLEGOS, JR.,

Defendant-Appellant.

Before: GADOLA, C.J., and K. F. KELLY and MARIANI, JJ.

PER CURIAM.

A jury convicted defendant of possession of methamphetamine with intent to deliver, MCL 333.7401(2)(b)(*i*); MCL 333.7214(c)(*ii*). Defendant appeals as of right the trial court's denial of his motion for directed verdict and its denial of his motion for a new trial. We affirm.

## I. FACTUAL BACKGROUND

The Van Buren County Sheriff's Department (VBCSD) used a confidential informant to conduct a controlled buy of methamphetamine. The informant had been told by an acquaintance that he could get methamphetamine for the informant. On September 16, 2021, VBCSD provided the informant with $300 cash in buy money—two $100 bills and two $50 bills. The informant testified at trial that he picked up the acquaintance and drove them to a small public access of an inland lake where VBCSD officers were surveilling the area. From their surveillance point, officers could observe vehicles entering or exiting the public access but could not see what was happening at the public access.

The informant testified that two vehicles—a truck and an Impala—were already parked at the public access when he and the acquaintance arrived. The informant testified that the Impala was occupied by a man, whom he identified as defendant, as well as a woman and a dog. According to the informant, the acquaintance then took the $300 from the informant, exited the informant's vehicle, approached the Impala, and returned with what appeared to be methamphetamine. The acquaintance did not testify at trial, and no other eyewitness testimony regarding the controlled buy was provided.

-1-

Officers did not observe any other vehicles entering or exiting the public access area. Officers followed both the truck and the Impala as they exited the area and conducted separate traffic stops of the two vehicles. The driver of the truck consented to a search of his vehicle; no money or contraband was discovered. When officers stopped the Impala, defendant admitted that there were drugs in the car and that they belonged to him. Officers searched the vehicle and found a plastic box[1] with magnets on it in the backseat containing 13.49 grams of methamphetamine. They also found methamphetamine pipes and defendant's wallet containing his ID and $220.

The prosecution presented testimony regarding user amounts and dealer amounts of methamphetamine. VBCSD Lieutenant Casey Davis, who participated in the investigation, and Michigan State Police Sergeant Evan Hauger, an expert witness for the prosecution, both testified that, in a controlled buy, officers commonly direct the purported user to purchase 1 to 3.5 grams of methamphetamine. This amount is based on what actual users commonly buy. Sergeant Hauger further testified that a dealer amount of methamphetamine was typically between 7 and 28 grams. He opined that 13 grams was a dealer amount of methamphetamine.

The jury also heard testimony regarding VBCSD's efforts (or lack thereof) to tie defendant to the buy money that VBCSD had supplied to the informant. VBCSD Sergeant Greg Pentland and Lieutenant Davis each testified that VBCSD typically makes a copy of the money used in a controlled buy in order to cross-reference those funds with the money found in the possession of the alleged dealer. No testimony was provided regarding whether the $220 recovered from defendant's wallet matched the buy money given to the informant. Lieutenant Davis testified that he thought he had taken photographs of the $220 recovered from defendant's wallet but that he could not find them. He further testified that he did not personally check to see if the $220 matched the $300 given to the informant.

The defense's expert testified about the amounts of daily use by methamphetamine users, stating that a heavy user could use up to five grams a day and half an ounce in three days. The expert also testified that heavy users can go on binges that last days or weeks.

Defendant testified that, at the time of his arrest, he was using 2 to 2.5 grams of methamphetamine a day. He testified that he had a large amount of methamphetamine in his possession at the time because he was unable to get out of the house often due to a suspended license and lack of access to a vehicle.

The jury found defendant guilty of possession of methamphetamine with intent to deliver.

## II. DEFENDANT'S MOTION FOR DIRECTED VERDICT OF ACQUITTAL

At the conclusion of the prosecution's case-in-chief, defendant moved for a directed verdict of acquittal. Defendant argued that the prosecution had presented insufficient evidence to establish

---

[1] At trial, Lieutenant Davis testified that magnetized boxes, like the one found in the Impala, are often used to transport narcotics in a manner that avoids detection by law enforcement during traffic stops. The magnets attached to the box are used to affix the box to the underside of the vehicle.

his intent to deliver because no witness could testify as to who sold the methamphetamine to the acquaintance. The prosecution argued that the testimony of the informant, along with the quantity of methamphetamine found in defendant's possession were sufficient to prove that defendant intended to deliver the methamphetamine. The trial court denied defendant's motion, and defendant argues on appeal that the trial court erred by doing so. We disagree.

This Court reviews de novo a trial court's decision to grant or deny a motion for directed verdict of acquittal. *People v Lemmon*, 456 Mich 625, 634; 576 NW2d 129 (1998). The evidence presented by the prosecution is viewed "in the light most favorable to the prosecution, up to the time the motion is made," to determine if the evidence "is insufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt." *Id*. at 633-634. While the prosecution need not disprove or negate every theory that is consistent with innocence, it "is obligated to prove its own theory beyond a reasonable doubt, in the face of whatever contradictory evidence the defendant may provide." *People v Chapo*, 283 Mich App 360, 363-364; 770 NW2d 68 (2009).

To prove that a defendant possessed a controlled substance with an intent to deliver under MCL 333.7401, the prosecution must prove beyond a reasonable doubt that: (1) the defendant possessed a controlled substance, (2) the defendant knew he or she possessed the controlled substance, (3) the defendant intended to deliver the controlled substance to someone else, and (4) the quantity of the controlled substance, if applicable. *People v Robar*, 321 Mich App 106, 131; 910 NW2d 328 (2017). Defendant's intent to deliver is the sole element at issue here; he does not otherwise dispute the sufficiency of the evidence against him.

"[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind . . . ." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). Intent to deliver "may be inferred from the amount of controlled substance possessed." *People v Williams*, 268 Mich App 416, 422; 707 NW2d 624 (2005) (quotation marks and citation omitted). Intent to deliver may also be inferred "from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *People v Wolfe*, 440 Mich 508, 524; 489 NW2d 748 (1992), amended by 441 Mich 1201 (1992). "[A]ctual delivery of narcotics is not required to prove intent to deliver." *Id.*

In this case, the prosecution presented sufficient circumstantial evidence to prove defendant's intent to deliver. Expert testimony established that between 7 and 28 grams of methamphetamine is consistent with a dealer amount. The 13.49 grams of methamphetamine that defendant admitted was in his possession falls squarely within this range. Additionally, the informant testified that he drove the acquaintance to the public access area to meet with a dealer to purchase methamphetamine. Upon arriving at the public access, the informant testified, the acquaintance left the informant's vehicle, went to the Impala, and returned with a baggie of methamphetamine. The informant further testified that he was able to get a look at the person that the acquaintance met with and identified him as defendant.

Defendant argues that the evidence was insufficient because there was no proof of a sale by defendant. At bottom, defendant's position is that he was entitled to a directed verdict of acquittal because the prosecution could not show that he, rather than the occupant of the truck, sold the methamphetamine to the acquaintance. Defendant, however, was charged with possession

with intent to deliver methamphetamine, not delivery of methamphetamine. And to prove defendant's guilt of possession with intent to deliver, the prosecution was not required to prove that defendant did, in fact, sell the methamphetamine to the informant. See *Wolfe*, 440 Mich at 524 ("[A]ctual delivery of narcotics is not required to prove intent to deliver.").

For the reasons discussed, the evidence presented by the prosecution, viewed in the light most favorable to the prosecution, was sufficient to justify a reasonable trier of fact to conclude, beyond a reasonable doubt, that defendant possessed methamphetamine with intent to deliver. See *Lemmon*, 456 Mich at 633-34. Accordingly, the trial court did not err by denying defendant's motion for a directed verdict of acquittal.

## III. DEFENDANT'S MOTION FOR A NEW TRIAL

Before sentencing, defendant moved for a new trial based on a posttrial discussion that defense counsel and the prosecuting attorney had with members of the jury regarding the controlled-buy money that VBCSD had given to the informant and the money that it had recovered from defendant. According to defendant, trial testimony established that officers had photocopied the $300 provided to the informant but that they had never compared the serial numbers on those bills to the serial numbers on the cash recovered from defendant. Defendant maintained, however, that during the posttrial discussion with the jury, the prosecuting attorney revealed that photographs had, in fact, been taken of the cash recovered from defendant but that those photographs had been misplaced; rather than inform the court and defendant of this, the prosecuting attorney had instructed one of the testifying officers, Lieutenant Davis, to simply say that the serial numbers were never checked. Defendant argued that this amounted to eliciting false testimony, that the prosecuting attorney had committed misconduct, and that, as a result, defendant was denied the opportunity to request an adverse-inference jury instruction with respect to the missing photographs. This, defendant contended, warranted a new trial.

The trial court denied defendant's motion. The court rejected defendant's claim that the prosecuting attorney had knowingly relied on false or misleading testimony. The court found that, to the contrary, the testimony elicited at trial was consistent with the alleged posttrial statements made by the prosecuting attorney: that members of VBCSD believed that photographs had been taken of the cash recovered from defendant, but those photographs could not be located. The court also found no basis for relief in defendant's claims for failure to disclose or preserve the missing photographs. The court noted that the absence of the photographs was discussed at trial and was also apparent from the police report made available to the defense before trial, and found that defendant had not shown that the prosecution acted in bad faith in failing to preserve the photographs or that the photographs would have been material or favorable to him. Defendant argues on appeal that the trial court erred by denying his motion for a new trial. We disagree.

We "review[] for an abuse of discretion a trial court's decision on a motion for a new trial." *People v Rogers*, 335 Mich App 172, 191; 966 NW2d 181 (2020).

> A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable outcomes. This Court reviews for clear error the factual findings underlying the trial court's application of the law. A finding is clearly

erroneous when this Court is left with the definite and firm conviction that the trial court erred. [*Id*. (citations omitted).]

"Generally, a claim of prosecutorial misconduct is a constitutional issue that is reviewed de novo, but a trial court's factual findings are reviewed for clear error." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

The trial court did not abuse its discretion by denying defendant's motion for a new trial. As discussed, this motion was based on the alleged misconduct of the prosecuting attorney. "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Defendant has fallen well short of this standard.

To start, we see no error in the trial court's conclusion that the prosecuting attorney did not knowingly elicit false or misleading testimony. The record reflects that the officers testified about what they each personally knew or did not know regarding the controlled-buy money and the money recovered from defendant. This included testimony from Lieutenant Davis that he believed that he took photographs of the bills recovered from defendant but was unable to locate the photographs, and that he did not personally verify whether the serial numbers on the bills matched those given to the confidential informant. Defendant has offered nothing to establish that this testimony was false or misleading, or that the trial court erred in its assessment of the record.

Nor has defendant offered anything to show that the prosecuting attorney committed misconduct in failing to disclose or preserve the missing photographs. To establish a violation of the prosecution's disclosure obligations under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), a defendant must show (1) that the prosecution has suppressed evidence; (2) that the suppressed evidence is favorable to the accused—i.e., that it is either exculpatory or impeaching; and (3) that the suppressed evidence is material—i.e., that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014).[2] And to establish a due-process violation based on the failure to preserve evidence, a defendant must show

---

[2] With respect to the materiality element, the Supreme Court in *Chenault*, 495 Mich at 150-151, elaborated:

> A reasonable probability is a probability sufficient to undermine confidence in the outcome. This standard does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. The question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence. In assessing the materiality of the evidence, courts are to consider the suppressed evidence collectively, rather than piecemeal. [Quotation marks, citations, and ellipsis omitted.]

that the State acted in bad faith or that the missing evidence was exculpatory. *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017).

Defendant has offered, and the record reflects, nothing that would establish misconduct as to the missing photographs. There is nothing to show that the State acted in bad faith in failing to preserve the photographs or that the photographs would have been exculpatory or otherwise favorable to defendant. Nor is there anything to show that the photographs would have been material. Had they revealed a mismatch between the bills provided to the informant and those recovered from defendant, that would have potentially undermined the notion that defendant sold the methamphetamine to the informant. But, as previously discussed, defendant's conviction of possession with intent to deliver did not require or depend on proof of an actual sale. See *Wolfe*, 440 Mich at 524. Furthermore, the officers' failures in tracking the money were fully explored at trial, and defense counsel, during both examination and closing arguments, used those failures to impugn the officers' investigation and credibility. We therefore see no basis to conclude that defendant was denied a fair and impartial trial as a result of the prosecution's conduct with respect to these photographs. See *Dobek*, 274 Mich App at 63.[3]

In sum, we find no merit in defendant's claim of prosecutorial misconduct, and the trial court did not abuse its discretion by denying his motion for a new trial on that basis.

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani

---

[3] Likewise, we see no basis to conclude that defendant would have been entitled to an adverse jury instruction regarding the missing photographs. See, e.g., *People v Davis*, 199 Mich App 502, 515; 503 NW2d 457 (1993), overruled in part on other grounds by *People v Grissom*, 492 Mich 296; 821 NW2d 50 (2012).